This is an appeal from a lower court judgment condemning and forfeiting one 1981 Dodge pickup truck and $11,419.49 in U.S. currency. We reverse and remand.
 FACTS:
On June 13, 1982, Michael Wayne Bailey was arrested pursuant to two outstanding arrest warrants. One warrant charged Bailey with third degree burglary; the other charged him with criminal mischief. Bailey was arrested by Pickens County Deputy Sheriff Allen Sexton between Bailey's ex-wife's house trailer and his 1981 Dodge pickup truck.
After procuring the truck keys from Bailey, Deputy Sexton locked the truck and transported Bailey to the jail in Carrollton. Sexton then returned to the scene and moved the truck to Reform City Hall, where he secured it.
The next day, Deputy Sexton and Officer Joe Walden of the Reform Police Department conducted a warrantless search of the vehicle and inventoried the contents. Among other items in the truck, they found one gram total weight of marijuana and a "trace" amount of cocaine. Additionally, the officers found a paper sack containing $10,000 in various denominations of bills. Bailey also had $1180 in his pocket and $239.49 in a Crown Royal whiskey bottle underneath the driver's seat.
On June 15, 1982, pursuant to Code 1975, § 20-2-93, the State filed a petition seeking to condemn Bailey's truck and the $11,419.49. On July 3, while on bond, Bailey was killed in a motorcycle accident in Florida. Sharlotte Pickron, appointed as administratrix of the Bailey estate in Florida, was substituted as the party defendant in the condemnation proceedings, which were heard by the court ore tenus on December 21, 1982. On February 15, 1983, the court ordered the 1981 Dodge pickup truck and the $11,419.49 forfeited to the State of Alabama. The truck was subsequently sold at public auction for $5,000. This sum is being held, along with the $11,419.49, by *Page 907 
the Circuit Clerk of Pickens County pending this appeal by the administratrix.
 DECISION
The pertinent portions of § 20-2-93 provide:
"(a) The following are subject to forfeiture:
". . . .
 "(4) Lawful currency (money) of the United States of America seized:
 "a. On or within any conveyance, including aircraft, vehicles or vessels, when the same are being used or intended for use to transport or in any manner to facilitate the transportation for the purpose of sale or receipt of property described in subdivisions (1) or (2) of this subsection;
". . . provided, however, that:
 "1. No lawful currency (money) of the United States of America shall be condemned and forfeited, wherever seized, except by an affirmative finding by the trier of fact, either the court or jury as the case might be, to the following interrogatory — `The (court) (jury) is reasonably satisfied from the evidence and inferences attendant thereto that the money in issue was used, or intended for use, in a transaction which would be a violation of the Alabama Controlled Substances Act.
 "(5) All conveyances, including aircraft, vehicles or vessels, which are used or intended for use to transport or in any manner to facilitate the transportation for the purpose of sale or receipt of property described in subdivisions (1) or (2) of this subsection; . . . ." (Emphasis supplied.)
Subdivision (1) refers to controlled substances, which include marijuana and cocaine.
The parties disagree as to the standard of proof required under § 20-2-93. Appellant contends the burden is preponderance of the evidence, while the State submits the statute calls for reasonable satisfaction. While we agree with the State that the standard of proof required under § 20-2-93 is reasonable satisfaction, we do not find any evidence to support the finding made by the trial court.
The State must establish a prima facie case for the seizure, condemnation, and forfeiture of property under § 20-2-93.Singleton v. State, 396 So.2d 1050, 1053 (Ala. 1981). After theprima facie case is established, it is incumbent upon any claimants to show that they had no knowledge or notice of the intended illegal use and could not have obtained knowledge by reasonable diligence. Singleton, supra, at 1053. We need not address the knowledge issue, for we do not find that the state established a prima facie case.
The search of the vehicle in question revealed the presence of .3 gram of marijuana found in the glove compartment of the truck. This amount was not in any kind of container inside the glove compartment, but, instead, had to be "raked out" and placed in a plastic bag in order to be weighed and analyzed. Additionally, .7 gram of marijuana was found in a black shoulder bag behind the front seat. This amount, too, was transferred to a plastic bag to be weighed and analyzed.
A vial found in the Crown Royal bottle was found to contain a small amount of cocaine. The amount in the vial was described as "residue" or a "trace amount" and was insufficient for weighing.
Bailey's ex-wife testified, over objection, that she "believed" that Bailey was involved in selling drugs. She based this belief on the fact that Bailey himself took drugs and always had large amounts of cash on hand. She further testified, however, that Bailey, in the operation of his logging business, dealt primarily on a cash basis.
It should be noted that Appellant contends that the trial court erred in allowing hearsay testimony to prove an ultimate issue of fact. The testimony to which Appellant refers is that of Earl Walden, an agent for the Department of Public Safety. *Page 908 
In response to questions by the District Attorney, Mr. Walden testified as follows:
 "Q Did you work a case in Pickens County involving a defendant by the name of Michael Wayne Bailey?
"A Yes, sir.
 "Q And how were you approached about participating in the investigation of that case?
 "A Chief Deputy McBride called me on June the 13th in the afternoon hours and informed me that —
 "MR. BLOCKER: Object to what the chief told him, Judge. That would be hearsay. He's about to testify as to what Chief Bailey [sic] told him on June the 13th.
 "THE COURT: It depends on what he talked about. If it goes to prove guilt or innocence of anyone —
 "MR. JOHNSTON: I'm asking him how he got in the case basically.
"THE COURT: Overruled.
 "A. Chief Deputy McBride called me Sunday afternoon and advised me that they had arrested a subject in Reform, Alabama, and that he believed this subject was involved, heavily involved, in drug activities, and gave me the subject's name and his date of birth, and asked me to check him through our system to see if there was any information to back that up, which I did. And I told him that I would meet him the next day, which would have been the 14th, a Monday, over here and assist him in working the case."
This testimony was introduced for a limited purpose — that of establishing the manner by which Walden became involved in the case. Because the trial court's order does not specify which evidence it considered in making its decision, we must assume it considered Walden's testimony only for the limited purpose for which it was admitted. Thus, the presence of illegal drugs, the presence of a large amount of cash, and Bailey's ex-wife's testimony, comprise the only evidence from which the trial court was "reasonably satisfied" that the truck and currency were "used or intended for use to transport . . . for the purpose of sale or receipt [of controlled substances]." We find that the evidence of record does not furnish a reasonable basis for the conclusion reached by the trial judge.
The trial court's findings in this case were as follows:
 "The Court finds that the 1981 Dodge pickup, at the time of its seizure by the State of Alabama, was being used, or was intended for use, to transport marijuana. The Court further is reasonably satisfied from the evidence and inferences attendant thereto that the money in issue was used, or intended for use in a transaction which would be a violation of the Alabama Controlled Substances Act."
The trial court seems to have overlooked the fact that the statute calls not just for a finding that the truck was used to transport marijuana, but that it was used, or intended for use, to transport a controlled substance for the purpose of sale orreceipt.
The evidence was uncontroverted that the $10,000 in cash was the result of a loan negotiated between Max Jones and Bailey three days prior to Bailey's arrest. The truck was purportedly the collateral for said loan and the lender had, in his possession, the title certificate endorsed by the deceased as evidence of the loan. Bailey's ex-wife corroborated this evidence, because Bailey had told her of it while he was in jail.
We find it unreasonable to conclude that one gram of marijuana (unpackaged and scattered throughout the vehicle) and a "trace" amount of cocaine (too small to be weighed) could be intended for sale. While it may be arguable that the $10,000 could have been the result of such a sale, there was no evidence to support that conclusion. On the contrary, uncontested, corroborated testimony supported the existence of a legitimate business loan made three days before the seizure. The only possible offense chargeable and sustainable under this proof is that of possession of a controlled substance. *Page 909 
In Reeder v. State ex rel. Myers, 294 Ala. 260, 314 So.2d 853
(1975), the State sought to condemn an automobile in which police officers found .001 gram of marijuana. This Court found that merepossession of a controlled substance did not constitute "sale or receipt" within the meaning of the forfeiture section. The Court stated:
 "We conclude that the word, `receipt,' as used in this statute means receiving for the purpose of sale or in some way to facilitate the sale of drugs. It does not mean possession merely. Statutes which authorize condemnation and forfeiture of property are highly penal in nature and must be strictly construed. Smithson v. Handley, 206 Ala. 353, 91 So. 447 (1921); Emerson v. State, 241 Ala. 383, 4 So.2d 186 (1941); Armstrong v. State ex rel. Embry, 248 Ala. 124, 26 So.2d 874 (1946); Satterfield v. Satterfield, 250 Ala. 245, 34 So.2d 4 (1948)." 294 Ala. at 265, 314 So.2d at 857.
The Court in Reeder determined that the evidence in that case showed no more than possession and that the State had failed to meet its burden of proof. Although the statute allowing forfeiture of currency was enacted after Reeder, Reeder's
rationale is still applicable.
While we cannot overturn a trial court's ore tenus findings of fact if there is any evidence, or reasonable inference therefrom, to support those findings, where there is no supportive evidence, as here, we are compelled to reverse the judgment based thereon. Because the trial court's findings are plainly erroneous, being without reasonable evidentiary support, we have no alternative but to reverse the judgment of forfeiture and remand this cause for an order consistent with this opinion. Chism v. Hicks,423 So.2d 143 (Ala. 1982).
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.